IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BRENDA C. STROUD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:12cv1070-TFM |
| | ) | (WO) |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

## I. PROCEDURAL HISTORY

The plaintiff, Brenda C. Stroud ("Stroud") applied for supplemental security income

benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, on

September 18, 2008, alleging that she is unable to work because of a disability.  Stroud's

application was denied at the initial administrative level. Stroud then requested and received

a hearing before an Administrative Law Judge ("ALJ").   Following the hearing, the ALJ

determined that Stroud is not disabled. The Appeals Council rejected a subsequent request

for review.  The ALJ's decision consequently became the final decision of the Commissioner

of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.

1986).   The parties have consented to the undersigned United States Magistrate Judge

rendering a final judgment in this lawsuit.  The court has jurisdiction over this lawsuit under

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No.
103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social
Security matters were transferred to the Commissioner of Social Security.

42 U.S.C. §§ 405(g) and 1383(c)(3).[2]  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner is due to be REVERSED and REMANDED.

## II.  STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

To make this determination,[3] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] Title 42 U.S.C. §§ 405(g) and 1383(c)(3) allow a plaintiff to appeal a final decision of the Commissioner to the district court in the district in which the plaintiff resides.

[3]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. INTRODUCTION

### A. The Commissioner's Decision

Stroud was 41 years old at the hearing before the ALJ and has completed the eighth grade. (R. 31, 128.) Stroud alleges that she became disabled on June 1, 2007, due to migraine headaches, depression, back pain, foot pain, and arthritis. (R. 35, 47, 138.) After the hearing, the ALJ found that Stroud suffers from severe impairments of arthralgia, arthritis, asthma, depression, personality disorder, migraine headaches, and borderline intellectual functioning. (R. 12.) The ALJ found that Stroud is unable to perform her past relevant work, but that she retains the residual functional capacity ("RFC") to perform light

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

work.  (R. 14.)  Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Stroud could perform, including work as an assembler, sewing machine operator, and garment bagger.  (R. 23.)  Accordingly, the ALJ concluded that Stroud is not disabled.  (*Id*.)

## III.  ISSUES

The plaintiff presents the following issues for this court's review:

(1)    The Commissioner's decision should be reversed because the ALJ erred as a matter of law in failing to find that Stroud's intellectual deficiency meets and/or equals the criteria of Listing 12.05C and/or 12.05D.

(2)    The Commissioner's decision should be reversed because the ALJ abused her discretion by substituting her own medical judgments for those of two examining psychiatrists, and failing to give substantial weight to Stroud's treating physician.

(Pl's Br., Doc. # 14, p. 4).

## IV.  DISCUSSION

The plaintiff raises several arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of the plaintiff's specific arguments, with the exception of her argument that she meets the requirements of Listing 12.05C, because the court concludes that the Commissioner erred as a matter of law; and thus, this case is due to be remanded for further proceedings.  Specifically, the court finds that the Commissioner erred by failing to properly evaluate whether Stroud meets Listing 12.05C at Step Three of

4

the sequential evaluation, substituted her judgment for that of the consultative physician, and failed to develop the record in full.

Stroud argues that the ALJ erred as a matter of law by failing to properly consider whether she has a valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The court agrees.

Section 12.05 of the Listing of Impairments define mental retardation as "significantly sub-average general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period; *i.e.* the evidence demonstrates or supports onset of impairment before age 22." *See* 20 C.F.R. Subpt P, App. 1, Listing 12.05(c). In addition to this requirement, the Listings provide, in pertinent part, that a claimant is disabled if he meets the following criteria:

> § 12.05. Mental Retardation . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied . . .
>
> C. A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

Consequently, a claimant meets the strictures of 12.05C by presenting evidence of (1) a sub-average general intellectual functioning initially manifested prior to age twenty-two; (2) valid IQ score of 60 to 70 inclusive; and (3) evidence of an additional mental or physical impairment that has more than a "minimal effect" on the claimant's ability to perform basic work activities. *Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992); *Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985).

The ALJ concluded that Stroud does not satisfy these requirements primarily because her daily activities and work history demonstrate that her adaptive functioning is in the borderline range of intelligence, she "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and [she does not have] a physical or other mental impairment imposing an additional and significant work-related limitation of function."  (R. 14.)

First, the ALJ's finding that Stroud does not have a valid IQ score falling between 60 and 70 is erroneous.  The mental health records demonstrate that Dr. J. Walter Jacobs, a consultative psychologist, conducted a psychological evaluation of Stroud in July 2010.  (R. 263.)  During the evaluation, Stroud took the Weschler Adult Intelligence Scale, Fourth Edition ("WAIS-IV").  On the WAIS-IV, she achieved a verbal index score of 63, a perceptual reasoning index score of 65, a working memory index score of 69, a processing speed score of 74, and a full scale IQ score of 61. (R. 265.)  Dr. Jacobs' found that Stroud's full scale IQ score falls within the mild range of mental retardation, that her subtest scores were uniformly low, and that the results of testing were "consistent with special education placement."  (R. 265.)  Thus, the ALJ's determination that Stroud does not have a valid full-scale IQ score which falls between 60 and 70 is not supported by substantial evidence.

Secondly, the ALJ's determination that Stroud's daily activities demonstrate that her adaptive functioning is in the borderline range of intelligence is not supported by substantial evidence.  In this Circuit, a claimant's IQ score is not conclusive evidence of a disability when it is inconsistent with other evidence of the claimant's daily activities and behavior. *See Popp v. Heckler*, 779 F.2d 1497 (11th Cir. 1986).  In *Popp*, the Eleventh Circuit Court

of Appeals held that the Listings for mental retardation do not require the Commissioner to make a finding of mental retardation based upon the results of an I.Q. test alone. However, the test results must be considered in context with other evidence including the daily activities and behavior of the claimant. *Id.* at 1499. If the ALJ concludes from other evidence in the record that the IQ scores are inconsistent with the claimant's actual intellectual functioning, the ALJ may properly find that the claimant does not meet the criteria of § 12.05. The ALJ's decision is reviewable by the court for substantial evidence.

In this case, the ALJ found:

> The Administrative Law Judge notes that the claimant's adaptive functioning places her intellectual functioning in the borderline range of intelligence. That is, the claimant's ability (as noted by Dr. Jacobs and testified to by the claimant) to manage her own finances, take care of her mother (who suffers from dementia), care for other relatives living in the household, takes care of her personal needs, read a newspaper, watch and concentrate on television, prepare meals, and perform household chores such as laundry establish that her adaptive functioning level [is] above mild mental retardation. It is noted that the claimant attended school through the 8th grade in alleged special education classes.

(R. 19.)

The ALJ's finding that Stroud takes care of her mother and other relatives in her household is a mischaracterization of the evidence. Stroud testified that, when she lived in her mother's house with her nephew and mother in 2009, "the people from the church were bringing food to the house for them [and] I just only like fixed something for them at night like a sandwich or something like that." (R. 52.) She stated that, in February 2010, she moved into a relative's house with her two daughters, son-in-law, nephew, and mother. (R.

37.) During the hearing, the ALJ questioned Stroud about her household responsibilities as follows:

> Q.     Do you take care of your parents or help with that?
>
> A.     I just help watch my mother, that's about it.  But she feed herself and - -
>
> Q.     What do you help do for your mother exactly?
>
> A.     Nothing but take her plate and that's about it, because she bathes her own self.  She do all that, and keep her from going out the door, stuff like that.
>
> Q.     So you sit with your mother?
>
> A.     Well, supposed to be all of us at the house, so it ain't like I'm there by myself.
>
> Q.     And how old is your mother?
>
> A.     62.

(R. 40-41.)  Stroud also testified that she washes clothes and cooks but "when it comes to cooking a big meal or something like that, my son-in-law do that."  (R. 54.)   Although Dr. Jacobs' notes indicate that Stroud "cares for her elderly mother who has dementia," the consultative  psychologist does not list any of Stroud's household duties or specify how she cares for her mother. (R. 263.)   This court cannot conclude that Stroud's ability to make sandwiches, take a plate of food to and sit with her mother in a house with five other adults establishes that she is her mother's caretaker.

The ALJ's finding that Stroud's testimony indicates that she is able to take care of her own finances is also incorrect.  During the hearing before the ALJ, Stroud testified that she

8

does not have a bank account, that she "can read and write, but [] can't add good," and that her son-in-law assists her with calculations when paying for items in a store. (R. 32.) Thus, the ALJ's finding concerning Stroud's testimony about her ability to take care of finances is not supported by substantial evidence.

When determining Stroud's adaptive functioning is above mild mental retardation, the ALJ also failed to resolve inconsistencies in the record. The ALJ is tasked with the responsibility of resolving inconsistencies in the evidence. *See generally Wolfe v. Chater*, 861 F.3d 1072, 1079 (11th Cir. 1996); *Johnson v. Barnhart*, 138 Fed. Appx. 266, 271 (11th Cir. 2005). When assessing Stroud's ability to concentrate, Dr. Jacobs found:

> Ms. Stroud could not do reverse serial sevens. She was able to do simple calculations by finger counting. This would include single digit multiplication and division. She made one error in attempting to count backward from twenty to one. Ms. Stroud was able to spell "world" forward and backward.

(R. 264.) When evaluating Stroud's fund of information, Dr. Jacobs noted Stroud was able to name the President of the United States, but that she was unable to name the capital or the Governor of the State of Alabama. (*Id.*) Despite noting that Stroud "does appear capable of functioning independently and managing her own finances," Dr. Jacobs diagnosed Stroud as suffering from mild mental retardation. (R. 265.) When relying on Dr. Jacobs' notes indicating that Stroud is able to function independently to conclude that her adaptive functioning is above the level of mild mental retardation, the ALJ failed to reconcile this determination with Dr. Jacobs' diagnostic assessment of mild mental retardation and his notes regarding Stroud's sensorium and cognition skills. The ALJ is not free to simply

ignore medical evidence, nor may he pick and choose between the records selecting those portions which support his ultimate conclusion without articulating specific, well supported reasons for crediting some evidence while discrediting other evidence. *Marbury v. Sullivan*, 957 F.2d 837, 840-41 (11th Cir. 1992).   By ignoring Dr. Jacobs' diagnosis of mild mental retardation and other evidence in the record, the ALJ substituted his judgment for that of the consultative psychologist when determining Stroud's adaptive functioning places her intellectual functioning in the borderline range of intelligence.   While the ALJ is entitled to make credibility determinations, the ALJ may not substitute his judgment for the judgments of experts in their field of expertise.   Psychiatrists deal with quintessentially subjective information with respect to which they must exercise professional, interpretive judgment. *Hill v. Astrue*, No. 1:09cv01-CSC, 2010 WL 1533121, *4 (M.D. Ala., April 15, 2010).

The court also concludes that the ALJ's suggestion that Stroud's work history as a poultry processor and a clothing launderer establishes that her adaptive functioning is above mild mental retardation is based on pure speculation.   Manual labor of this nature "does not require great mental acumen, and the fact that [Stroud] worked, which the ALJ emphasized, is by itself barely relevant." *Williams v. Astrue*, 692 F.Supp.2d 1331, 1341 (N.D. Fla. 2010) (citing *Powell v. Heckler*, 773 F.3d 1572 (11th Cir. 1985); *Ambers v. Heckler*, 736 F.2d 1467 (11th Cir. 1984)).

The second prong of the Listing requires "evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities." *Lowery*, 979 F.2d at 837; *Edwards*, 755 F.2d at 1517.   The  medical records

clearly demonstrate that Stroud suffers from additional mental health impairments. For example, Stroud participated in group therapy at SpectraCare on several occasions in 2009. (R. 229, 238-240.) On December 8, 2009, a psychiatrist diagnosed Stroud with major depressive disorder, recurrent, moderate; personality disorder non-specific; and trichotillomania (hair pulling). (R. 236.) During his consultative examination of Stroud on July 7, 2010, Dr. Jacobs also noted that "[u]nder the circumstances, it is not surprising that Ms. Stroud experiences anxiety and depression." (R. 263.) On January 18, 2011, Dr. Fernando Lopez, a psychiatrist, noted that Stroud's mood was depressed and prescribed medication. (R. 230.) The ALJ, however, fails to consider these mental health records when determining Stroud does not meet the requirements of Listing 12.05C.

Stroud also suffers from additional physical impairments. For example, in December 2007, Stroud presented to Dale Medical Center with complaints of pain in her lower back and right leg. (R. 205-207.) On July 11, 2008, Stroud returned to the medical center complaining of lower back pain. (R. 200.) On November 3, 2008, Dr. Sam Banner, a consultative physician, conducted a physical examination, specifically noting problems with the range of motion of Stroud's neck and left elbow. (R. 224.) Dr. Banner diagnosed Stroud as suffering from chronic left arm pain and arthralgia, noting that "[c]laimant will need continued medical care." (R. 222, 225.) The ALJ, however, ignores Dr. Banner's findings and substitutes his judgment for that of a medical specialist when determining Stroud does not have an additional physical impairment. When considering Stroud's chronic left arm pain coupled with her depression, anxiety, and other psychological impairments, the court cannot conclude

11

that the ALJ's finding that there is no evidence of an additional mental or physical impairment imposing additional and significant work-related limitation of function is supported by substantial evidence.

The court also concludes that the ALJ failed to consider Stroud's inability to afford medical treatment when determining that Stroud has the residual functional capacity to perform work. The ALJ discredited Stroud's allegations of disabling symptoms based on sporadic medical treatment. While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this Circuit that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). The medical records are replete with references to Stroud's inability to afford treatment. For example, on November 3, 2008, Dr. Banner noted that Stroud "has had no other medical treatment due to a lack of funds" and that she "will need continued medical care." (R. 222, 225.) On July 7, 2010, Dr. Jacobs also noted that Stroud "does not receive regular medical care [and is] going to the ER if medical treatment is necessary." (R. 263.) Despite recommendations concerning the need for continued medical treatment and notations indicating Stroud is uninsured and is unable to afford treatment, the Commissioner did not properly consider whether Stroud's financial condition prevented her from seeking medical treatment. Although the ALJ states that "community clinics exist in the local area of the claimant's residence that offer both reduced cost and free medical treatment for indigent people," the ALJ does not point to any medical specialists or health centers which are willing to treat Stroud's specific physical or mental health conditions on

a gratuitous basis.  Thus, this court cannot conclude that the ALJ's discrediting of Stroud based on her failure to seek treatment is supported by substantial evidence.

Finally, the court concludes that the ALJ erred in failing to fully develop the record regarding the extent of Stroud's physical impairments.  Notwithstanding evidence in the record indicating that Stroud complained of back pain during the relevant time period, the ALJ took no steps to explore the severity of Stroud's condition by securing additional testing by a medical specialist.  On July 11, 2008, a radiologist noted "a .5 sclerotic area overlying the left pedicle of L5, visible only on the AP view" and "suggest[ed] a nuclear bone scan for further evaluation."  (R. 203.)  The record, however, does not include records of the recommended bone scan.  It is error for the ALJ to fail to obtain additional testing or otherwise develop the evidence, if that information is necessary to make an informed decision.  *See Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Freel v. Astrue*, 2012 WL 628463, *6 (M.D. Fla. 2012) ("The ALJ is not required to order a consultative examination or additional testing unless the record shows that such an examination is necessary for the ALJ to render a decision.").  Because the ALJ's reasons for discounting the consultative physicians' opinions is based on her lack of treatment and it is documented that the reason for the lack of medical records is her inability to afford treatment, the court cannot conclude that the lack of evidence is a sufficient reason on its own for discounting the physicians' opinion.  Consequently, on remand, the ALJ shall consider whether ordering a bone scan would assist him in determining Stroud's disability status.

"Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's

13

duty to investigate the facts and develop the arguments both for and against granting

benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).

> The SSA is perhaps the best example of an agency that is not based to a
> significant extent on the judicial model of decisionmaking.  It has replaced
> normal adversary procedure with an investigatory model, where it is the duty
> of the ALJ to investigate the facts and develop the arguments both for and
> against granting benefits; review by the Appeals Council is similarly broad.
> *Id*.  The regulations also make the nature of the SSA proceedings quite clear.
> They expressly provide that the SSA "conducts the administrative review
> process in an informal, nonadversary manner."  20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

For these reasons, the court concludes that the Commissioner erred as a matter of law,

and that the case should be remanded for further proceedings.

## VI.  CONCLUSION

Accordingly, this case will be reversed and remanded to the Commissioner for further

proceedings consistent with this opinion.

A separate order will be entered.

Done this 16th day of August, 2013.

    /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE